IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

LISSETTE MIRABAL and JOSE MIRABAL,

    Plaintiffs,

CASE NO.: 1:17-cv-24352-KMW

vs.

USAA CASUALTY INSURANCE
COMPANY,

    Defendant.

_____

**DEFENDANT USAA CASUALTY INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW**

Defendant USAA CASUALTY INSURANCE COMPANY ("USAA CIC") by and through undersigned counsel and pursuant to Federal Rule of Civil Procedure 56, moves this Honorable Court for entry of an Order granting Summary Judgment and states as follows:

**INTRODUCTION**

This case arises out of a motor vehicle accident that occurred on June 4, 2015 wherein Plaintiff Lissette Mirabal allegedly suffered permanent injuries. USAA CIC was Mrs. Mirabal's underinsured motorist insurance carrier and after the accident, a demand was made by Mrs. Mirabal's lawyer, David Barron, for the under insured ("UM") policy limits of $75,000. USAA CIC disagreed regarding the value of the claim and Plaintiffs' counsel filed a Civil Remedy Notice ("CRN") on October 27, 2016.  On November 9, 2016, a mere thirteen days after filing the Civil Remedy Notice, Plaintiffs' Counsel filed a Complaint asserting UM benefits, loss of consortium, and allegations of bad faith. Because Plaintiffs' counsel clearly disregarded the required 60-day waiting period before filing a Complaint for bad faith, the Circuit Court instituted a new 60-day

1

period to correct this procedural error. Within this new 60-day period, USAA CIC learned of new medical treatment received by Plaintiff and timely paid the $75,000 policy limits, therefore curing any alleged violations of bad faith and effectively ending the case.

Plaintiffs, now apparently dissatisfied with USAA CIC's timely payment of the CRN demand, requests this Court to (1) completely disregard the State Court's ruling extending the CRN deadline to (a ruling that was not contested in any way), (2) determine that USAA CIC's payment was not timely, (3) allow a trial to determine bad faith, and (4) hold a completely new trial for a second determination of the damages for the underlying motor vehicle accident. This position is untenable and summary judgment should be granted.

## UNDISPUTED STATEMENT OF FACTS

1. On October 27, 2016, Plaintiffs filed a Civil Remedy Notice with the Department of Financial Services. *A copy of the CRN and Response Letter are attached at Bates DEF MSJ001-004.*

2. On November 9, 2016, Plaintiffs filed an initial Complaint against USAA CIC in the Circuit Court of the 11th Judicial Circuit, in and for Miami-Dade County, Florida. Case No. 2016-028955-CA-01 ("Circuit Court case") that included a count for UM alleging on or about June 4, 2015, Plaintiff Lissette Mirabal suffered permanent injuries due to the negligence of an uninsured/underinsured motorist and also included counts for Loss of Consortium, Statutory Bad Faith and Declaratory Judgment. *A copy of the initial Complaint is attached at Bates DEF MSJ005-013.*

3. On December 20, 2016, Defendant filed a Motion to Dismiss Plaintiffs' Complaint which stated, in part, that dismissal was appropriate because Plaintiff's bad faith claim was filed prior to the expiration of the 60-day CRN cure period. (Plaintiffs' Civil Remedy Notice was

accepted by the Florida Department of Financial Services on October 27, 2016 and did not expire until December 27, 2016.). *A copy of Defendant's Motion to Dismiss Plaintiffs' Complaint is attached at Bates DEF MSJ014-036.*

4. On December 21, 2016, Defendant timely responded to Plaintiffs' CRN via correspondence and by filing an electronic response with the Florida Department of Financial Services stating the CRN lacked specificity, there is a difference of opinion regarding value and that Defendant continued to evaluate and negotiate the claim. Bates DEF MSJ001-004.

5. On January 4, 2017, after the CRN cure period, Plaintiffs filed an Amended Complaint attempting to circumvent or correct the error of having filed the initial Complaint prior to expiration of CRN 60-day cure period. *A copy of the Amended Complaint is at Bates DEF MSJ037-046.*

6. On January 13, 2017, Defendant moved to dismiss Plaintiffs' Amended Complaint as it related back to the original Complaint and did not correct or alleviate the violation of the statutory notice requirement of Fla. Stat. §624.155. *A copy of Defendant's Motion to Dismiss the Amended Complaint is attached at Bates DEF MSJ047-071.*

7. On January 26, 2017, Plaintiffs responded to Defendant's Request for Admissions and admitted that Plaintiff Lissette Mirabal's claim for UM damages did not exceed the sum of $75,000.00 exclusive of interests and costs and that "Plaintiffs damages in Counts I (UM benefits) and II (Loss of Consortium) are limited to the policy limits of $75,000.00." *A copy of Plaintiffs' Response to Defendant's Requests for Admissions is attached at Bates DEF MSJ072-073.*

8. On April 12, 2017, a hearing was held on Defendant's Motion to Dismiss before Circuit Court Judge Eric Hendon[1] where Plaintiffs' bad faith claim was dismissed without

---

[1] Judge Hendon has subsequently been appointed to Florida's Third District Court of Appeals.

3

prejudice. *A copy of the Hearing Transcript for Motion to Dismiss is attached as Bates DEF MSJ074-087.* Judge Hendon also extended the 60-day CRN cure period by stating the "time period gets to start over." Pursuant to the Court's ruling, the response time to the CRN was extended until June 11, 2017, 60 days from the date of the April 12, 2017 hearing. Bates DEF MSJ085, Lines 5-6. *A copy of the Order granting Defendant's Motion to Dismiss is attached at Bates DEF MSJ088-089.*

9. On April 13, 2017 Plaintiff Lisette Mirabal underwent a two-level anterior cervical discectomy and fusion surgery.

10. On April 18, 2017, Plaintiffs moved for re-hearing requesting the Court reconsider its decision to dismiss rather than abate the bad faith claim. Plaintiffs did not object to the extension of the cure period. Plaintiffs never moved for clarification or re-hearing on the extension of the cure time period. Plaintiffs never appealed or in any way challenged the extension of this time period. *A copy of Plaintiffs' Motion for Re-hearing is attached at Bates DEF MSJ090-097.*

11. On April 19, 2017 USAA CIC was informed of Plaintiff Lisette Mirabal's surgery which occurred six days prior.

12. The next day, April 20, 2017 USAA CIC offered the policy limits to Plaintiffs. *A copy of email correspondence regarding the offer of policy limits is attached at Bates Def MSJ098.*

13. On May 4, 2017, Plaintiffs' counsel rejected USAA CIC's offer of the policy limits. *A copy of email correspondence regarding Plaintiffs' counsels rejecting the limits is attached at Bates Def MSJ099.*

14. On May 17, 2017, well within the court-ordered CRN response time, USAA CIC tendered the UM policy limits of $75,000.00 to counsel for Plaintiffs as a complete cure. *A copy of Defendant's tender letter and check No. 0018467370 is attached at Bates DEF MSJ100-101.*

4

15. On May 19, 2017, Plaintiffs' counsel rejected the tender and returned the check to Defendant. *A copy of Plaintiffs letter rejecting the tender is attached at Bates DEF MSJ102-104.*

16. On July 06, 2017, Defendant USAA CIC filed a Motion for Summary Judgment on the basis that Plaintiffs' claims were exhausted by tender of the policy limits within the new 60-day CRN cure period allowed by the Court. *A copy of Defendant's Motion for Summary Judgment is attached at Bates DEF MSJ105-147.*

17. On July 27, 2017, Plaintiffs' filed a Motion for Entry of Final Judgment asserting that the "only issue remaining before the Court is whether or not it is appropriate to enter Judgment for the Plaintiff in the amount of $75,000.00." *A copy of Plaintiffs Motion for Entry of Final Judgment is attached at Bates DEF MSJ148-150, ¶ 7.*

18. On August 18, 2017, Circuit Court Judge Eric Hendon heard USAA CIC's Motion for Summary Judgment and Plaintiffs' Motion for Entry of Final Judgment. Judge Hendon granted Defendant's Motion for Summary Judgment reasoning that "the amount at issue was $75,000" but "[t]here's no longer any disputed issues of material fact." *A copy of the Hearing Transcript is attached at Bates DEF MSJ151-169.* See DEF MSJ161, lines 4-14. *A copy of the Order granting Defendant's Motion for Summary Judgment is attached at Bates DEF MSJ170.*

19. At this hearing, the Circuit Court also granted Plaintiffs' Motion for Entry of Final Judgment "to the extent the tender was made." Judge Hendon further stated that USAA CIC "need[ed] to go ahead and satisfy that. It will be a judgment of $75,000 for the plaintiff." Bates DEF MSJ163, Lines 24 -25 and MSJ164, Lines 1-3. *A copy of the Order granting Plaintiff's Motion for Entry of Final Judgment is attached at Bates DEF MSJ171.*

20. On August 21, 2017, pursuant to the Circuit Court's Orders and findings on the record from the hearing on August 18, 2017, Defendant USAA CIC re-issued a check for the UM policy limits of $75,000.00. *A copy of the re-issued tender check is attached at Bates DEF MSJ172.*

21. On August 23, 2017 check #0019387124 in the amount of $75,000.00 was unconditionally negotiated by Plaintiffs' counsel. *Id.*

22. On October 23, 2017, Plaintiffs filed the subject suit alleging Defendant violated sections 624.155 and 626.9541, Florida Statutes. *A copy of the bad faith Complaint is attached at Bates DEF MSJ173-186.*

## MEMORANDUM OF LAW

### I. STANDARD FOR SUMMARY JUDGMENT

Rule 56(a), Federal Rules of Civil Procedure, provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the initial burden of showing the court that there is no genuine dispute as to any material fact. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party's burden is discharged merely by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support [an essential element of] the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325. The district court must view the evidence in the light most favorable to the party opposing the motion. *Johnson v. Clifton*, 74 F.3d 1087, 1090 (11th Cir. 1996).

Once the moving party has adequately supported its motion, the non-movant then has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587

(1986). There is no "genuine [dispute] for trial" when the record as a whole could not lead a rational trier of fact to find for the nonmoving party. *Id.* (citations omitted).

Although a cause of action for bad faith generally raises factual issues for determination by a jury, the courts in Florida have granted summary judgment where, as a matter of law, the insurance company could not be liable for bad faith. *Berges v. Infinity Ins. Co.*, 896 So. 2d 665, 680 (Fla. 2004). See, e.g., *Caldwell v. Allstate Ins. Co.*, 453 So. 2d 1187, 1190 (Fla. 1st DCA 1984) (affirming summary judgment in favor of insurer because it "cannot reasonably be said that [the insurer] or its counsel was guilty" of bad faith conduct); *Barnard v. Geico Gen. Ins. Co.*, 448 Fed. App'x 940, 943 (11th Cir. 2011) ("Florida courts have endorsed judgment as a matter of law in cases where the undisputed facts would not support the conclusion that the insurer acted in bad faith.").

## II. USAA TENDERED POLICY LIMITS WITHIN THE 60 DAY CURE PERIOD THEREBY EXTINGUISHING PLAINTIFFS' BAD FAITH CLAIM

As a condition precedent to bringing an action pursuant to Fla. Stat. §624.155, the plaintiff must first give written notice of the alleged violation by filing a CRN with Florida's Department of Financial Services ("DFS") and serving the CRN upon the insurer. Section 624.155 operates to require that 60 days pass prior to initiating a bad faith claim:

> (3)(a)  As a condition precedent to bringing an action under this section, the department and the authorized insurer must have been given 60 days' written notice of the violation. If the department returns a notice for lack of specificity, the 60-day time period shall not begin until a proper notice is filed.
>
> (5)(d)  No action shall lie if, within 60 days after filing notice, the damages are paid or the circumstances giving rise to the violation are corrected.
>
> (5)(f)  The applicable statute of limitations for an action under this section shall be tolled for a period of 65 days by the mailing of the notice required by this subsection or the mailing of a subsequent notice required by this subsection.

Fla. Stat. §624.155

Additionally, the CRN "shall state with specificity" the following: 1) the statutory provision which the insurer allegedly violated, including the specific language of the statute; 2) the facts and circumstances giving rise to the violation; 3) the name of any individual involved in the violation; 4) reference to any specific policy language that is relevant to the violation; and 5) a statement that the notice is given in order to perfect the right to pursue the civil remedy. Fla. Stat. § 624.155(3)(b). The "notice must be made with sufficient specificity to allow the insurer to understand and, if it chooses, to cure the violation." *Longpoint Condo. Ass'n v. Allstate Ins. Co.*, No. 5:05CV45RHWCS, 2005 WL 1315810, at *2 n.3 (N.D. Fla. June 2, 2005).

The purpose of requiring a CRN "is to give the insurer one last chance to settle a claim with its insured and avoid unnecessary bad faith litigation - ***not to give the insured a right of action to proceed against the insurer even after the insured's claim has been paid or resolved***." *Lane v. Westfield Ins. Co.*, 862 So. 2d 774, 779 (Fla. 5th DCA 2003) (***emphasis added***). See also *316, Inc. v. Maryland Cas. Co.*, 625 F. Supp. 2d 1187, 1192 (N.D. Fla. 2008) (stating that the sixty-day window is intended "as a last opportunity for insurers to comply with their claim-handling obligations"). The sixty-day time frame is designed as a "cure period" to encourage the insurer to resolve the underlying claim, thereby curing any alleged violations set out in the CRN. *Talat Enterprises, Inc. v. Aetna Cas. & Sur. Co.*, 753 So. 2d 1278, 1283 (Fla. 2000). Thus, "[no] action shall lie if, within 60 days after filing notice, the damages are paid or the circumstances giving rise to the violation are corrected." Fla. Stat. § 624.155(d). A "statutory cause of action for extra-contractual damages simply never comes into existence until expiration of the sixty-day window without the payment of the damages owed under the contract." *Id.* at 1284. However, where the insurer "cures" the alleged violation by paying the amount owed under the policy before

8

the sixty-day period expires, a statutory bad faith action for extra-contractual sums is precluded. *Id.* at 1282. Because this civil remedy "is in derogation of common law, *it must be strictly construed.*" *Id.* at 1283 (*emphasis added*). Failing to strictly comply defeats the purpose of requiring the plaintiff to file a CRN to allow the insurer an opportunity to settle the underlying claim and avoid unnecessary bad faith litigation. *Dellavecchia v. GEICO Gen. Ins. Co.*, No. 8:09–cv–2175–T–27TGW, 2011 WL 53029, at *3 (M.D. Fla. Jan. 7, 2011).

In relation to the Circuit's Order extending the CRN deadline, a court "must take an active role in managing cases on [its] docket" and enjoys broad discretion "in deciding how to best manage the cases before [it]." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1366 (11th Cir. 1997); *Gomez v. Empower "U", Inc.*, Case No. 17-CV-22633-GAYLES, 2017 U.S. Dist. LEXIS 179778, at *4 (S.D. Fla. Oct. 31, 2017). Generally, a trial court has discretion to extend deadlines in a multitude of matters. Fla. R. Civ. P. 1.090[2]; See *Ochoa v. Koppel*, 197 So. 3d 77, 82 (Fla. 2d DCA 2016) ("If a party that is sincerely interested in settlement has a bona fide need for more time to accept or reject it, the court has the discretion to rectify that problem by granting an enlargement of time."); *Amaran v. Marath*, 345 So. 3d 88, 95 (Fla. 3d DCA 2010) (stating that the trial court has broad discretion in extending the time for service). Moreover, certain periods of time that cannot be enlarged are expressly enumerated within Rule 1.090, and the list does not include any provisions of section 624.1555, Florida Statutes.

---

[2] Fla. R. Civ. P. 1.090(b), entitled "Enlargement," states as follows: "When an act is required or allowed to be done at or within a specified time by order of court, by these rules, or by notice given thereunder, for cause shown the court at any time in its discretion (1) with or without notice, may order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order, or (2) upon motion made and notice after the expiration of the specified period, may permit the act to be done when failure to act was the result of excusable neglect, but it may not extend the time for making a motion for new trial, for rehearing, or to alter or amend a judgment; making a motion for relief from a judgment under rule 1.540(b); taking an appeal or filing a petition for certiorari; or making a motion for a directed verdict."

### a. Plaintiffs Prematurely Filed their Complaint Prior to the Expiration of the 60-Day CRN Cure Period

On October 27, 2016, Plaintiffs filed their CRN. USAA's opportunity to cure any alleged violation did not expire until December 26, 2016, but Plaintiffs prematurely filed their Complaint on November 9, 2016, well before the expiration of the 60-day cure period. As such, Plaintiffs' bad faith claims must cannot stand as Plaintiffs failed to satisfy the condition precedent to bringing a first party claim under Section 624.155. Plaintiffs' claims are therefore not only premature but fail to state a cause of action.

### b. Defendant's Timely Tendered the Policy Limits within the 60-day Cure Period

In the underlying Circuit Court action, the court dismissed Plaintiffs' claim for bad faith on the basis that the claim was premature and potential prejudice against USAA CIC related to the ability to remove the case to Federal Court. Bates DEF MSJ074-087 and Bates DEF MSJ088-089. The Court also extended the cure period because Plaintiffs' failed to strictly comply with the notice requirements of Fla. Stat. §624.155 and tainted the 60-day safe harbor period when Plaintiffs prematurely filed their Complaint. Because of this error, Judge Hendon specifically stated the "time period gets to start over" Bates DEF MSJ085, lines 5-6.

On May 17, 2017, well within the court-ordered 60-day cure period, USAA CIC tendered the full UM policy limits of $75,000 and thereby cured any and all alleged violations set forth in the CRN. Bates DEF MSJ098-099. Based on the tender and cure, Defendant filed a Motion for Summary Judgment and Plaintiffs filed a Motion for Entry of Final Judgment. Bates DEF MSJ105-147 & Bates DEF MSJ148-150. Both motions were heard on August 18, 2017, and the trial court granted both motions as there was no disputed issues of material fact and "to the extent tender was made." Bates DEF MSJ163, Lines 24-25.  While the Circuit Court was correct in granting USAA

CIC's Motion for Summary Judgment, the Court likely should not have granted Plaintiffs' Motion for Entry of Final Judgment. Rather, the Court should have simply dismissed the case as there could be no claim for bad faith once USAA CIC tendered the limits and cured the CRN.

On August 21, 2017 in accordance with the trial court's orders, Defendant re-issued the tender check for the policy limits to Plaintiffs' counsel. On August 23, 2017, check No. 0019387124 in the amount of $75,000 was negotiated without objection or reservation by Baron & Herskowitz, P.A. Bates DEF MSJ172. Therefore, Defendant USAA CIC timely tendered the policy limits within the new 60-day CRN cure period pursuant to the state court's order.

### c. The 60-day Extension was Proper and Plaintiffs Waived any Deficiency in the Ruling

On April 12, 2017, the Circuit Court extended the 60-day cure period to respond to Plaintiffs CRN. Bates DEF MSJ085, Lines 4-6. The extension was because Plaintiffs tainted the initial CRN cure period by filing their Complaint, which included a count for bad faith, prior to the expiration of the 60-days. *Id.*

The Circuit Court was well within its discretion and power to extend the cure period to efficiently resolve the matter. *Chudasama*, 123 F.3d at 1366 (holding that a trial court has the discretion and power to manage the cases before it); *Gomez*, 2017 U.S. Dist. LEXIS 179778, at *4 (a court has the inherent authority to manage its docket with a "view toward efficient and expedient resolution of cases."). Here, the Circuit Court's extension of the cure period was its attempt to rectify Plaintiffs' error of prematurely filing a bad faith claim prior to the expiration of the CRN. *Ochoa*, 197 So. 3d at 82 ("If the party is unable to get a motion seeking an enlargement heard before the time expires, but the trial court determines that an enlargement is warranted, its decision to grant the enlargement rectifies the problem").

As an initial matter, Plaintiffs did nothing to preserve the issue of the 60-day extension for review. *Morrison v. State,* 818 So. 2d 432, 446 (Fla. 2002) ("In order to preserve the issue for appellate review, a party must have made the same argument to the trial court that is raises on appeal). Plaintiffs did not provide the trial court with an opportunity to review their argument alleging that the 60-day extension was error. *Millar Elevator Serv. Co. v. McGowan*, 819 So. 2d 145, 153 (Fla. 2d DCA 2002) ("To provide a trial court with opportunity to correct errors, a timely objection is necessary."). Providing a timely objection further promotes judicial economy. *Id.* ("and prevents a 'party from rolling the dice with the jury, confident that an unvoiced objection will garner a new trial if the verdict is unfavorable.'"). Here, if Plaintiffs' counsel felt error occurred, an objection should have been made during USAA CIC's Motion to Dismiss hearing. However, Plaintiffs' counsel did not object and cannot now be afforded an opportunity to complain of alleged error.

In addition to not making a timely objection to the 60-day extension, Plaintiffs' counsel did not move the court for rehearing or reconsideration on the 60-day extension; did not appeal the 60-day extension; nor did Plaintiffs seek any other review on the issue. See *McGowan*, 819 So. 2d at 153 (timely objections are necessary to review alleged error); see generally *Coca Cola Foods v. Cordero*, 589 So. 2d 961, 962 (Fla. 1st DCA 1991) (the court lacks jurisdiction where a party fails to timely file an appeal). Although Plaintiffs filed a motion for re-hearing, it only requested the Court reconsider whether the bad faith claim should be abated rather than dismissed. The Court's decision to provide for a new 60-day time period to respond to the CRN was not addressed in that pleading or in any other pleading with the Court and as a result, Plaintiffs have waived any deficiency in the ruling. Bates DEF MSJ090-092.

Florida courts "have defined 'waiver' as the voluntary and intentional relinquishment of a known right or conduct which implies the voluntary and intentional relinquishment of a known right." *Raymond James Fin. Servs. v. Saldukas*, 896 So. 2d 707, 711 (Fla. 2005). The elements of waiver are: "(1) the existence at the time of the waiver of a right, privilege, advantage, or benefit which may be waived; (2) the actual or constructive knowledge of the right; and (3) the intention to relinquish the right . . . ." *Woodlands Civics Ass'n v. Darrow*, 765 So. 2d 874, 877 (Fla. 5th DCA 2000) (quoting *Taylor v. Kenco Chem. & Mfg. Corp.*, 465 So. 2d 581, 587 (Fla. 1st DCA 1985)).

Plaintiffs knew of their right to seek review of the Circuit Court's 60-day extension, and were presented with multiple opportunities to seek review but they chose to relinquished that right. Instead, Plaintiffs only sought review of the court's dismissal of the bad faith count in their motion for rehearing. Plaintiffs cannot now, over a year later, claim the Circuit Court erred in extending the cure period. *Saldukas*, 896 So. 2d at 711; *McGowan*, 819 So. 2d at 153; *Cordero*, 589 So. 2d at 962. Thus, the 60-day extension by the state court was proper and Plaintiffs waived any deficiency in that ruling.

### d. Plaintiffs' Are Barred by the Doctrine of Accord and Satisfaction

Under Florida law, an accord and satisfaction occurs when: (1) there is a preexisting dispute as to the nature and extent of an obligation between parties, (2) the parties mutually intend to effect a settlement of an existing dispute by entering into a superseding agreement; and (3) there is a tender by the debtor and an acceptance of performance by the creditor. *St. Mary's Hosp., Inc. v. Schocoff*, 725 So. 2d 454 (Fla. 4th DCA 1999); See *Martinez v. S. Bayshore Tower, LLLP*, 979 So. 2d 1023, 1024 (Fla. 3d DCA 2008) ("Compliance of the new agreement discharges the prior

obligations."); see also *Cirrus Design Corp. v. Sasso*, 95 So. 3d 308, 311 (Fla. 4th DCA 2012) (same).

It is well-established that "an accord and satisfaction results as a matter of law when an offeree accepts payment which is tendered only on the express condition that its receipt is to be deemed a complete satisfaction of a disputed claim." *Hannah v. James A. Ryder Corp.*, 380 So. 2d 507, 509-10 (Fla. 3d DCA1980); see also *United Auto Ins. Co. v. Palm Chiropractic Ctr., Inc.*, 51 So. 3d 506, 509 (Fla 4th DCA) ("An accord and satisfaction results as a matter of law 'when the creditor accepts payment tendered on the expressed condition that its receipt is deemed to be a complete satisfaction of a disputed issue.'"); see also *Republic of Funding of Fla. v. Juarez*, 563 So. 2d 145 (Fla. 5th DCA 19990). By cashing the check, it shows that the offeree "intended to effectuate a settlement of the dispute and also constituted actual performance of the new agreement." *Martinez*, 979 So. 2d at 1024. Once the offeree cashes a check tendered as full and final payment of a claim, he or she cannot later avoid the effect of that action by claiming to have received the funds only under protest. *Hannah*, 380 So. 2d at 510. Where the party receives the settlement check but does not agree to the terms of the condition, that party has the option of rejecting it by returning the check; however, a party's failure to do so will bind him to the conditions of the check as expressed. *Burke Co. v. Hilton Dev. Co.*, 802 F. Supp. 434, 439 (N.D. Fla. 1992).

Here, all required elements of accord and satisfaction were met. First, there was an amount in dispute between the parties. Prior to filing a CRN, Plaintiffs made a demand for the policy limits and USAA CIC countered that demand with two different offers. Thereafter, Plaintiffs filed a CRN again demanding the policy limits. Second, there was an intention by the parties to effect settlement by a superseding agreement. The purpose of a CRN is to allow the insurer 60 days to cure any and

all alleged violations of bad faith. Thus, when Plaintiffs filed a CRN it was their intent to obtain the policy limits from USAA CIC and further settle any and all alleged violations of bad faith.

Finally, there was a tender and acceptance of the policy limits. Section 624.155(d) states "no action shall lie if, within 60 days after filing notice, the damages are paid or the circumstances giving rise to the violations are corrected." Thus, where an insurer tenders pursuant to a CRN, full and final settlement of any and all alleged bad faith violations has been effected. Here, USAA CIC tendered within the new 60-day period as ordered by the court. Additionally, the Circuit Court also granted USAA CIC's Motion for Summary Judgment and Plaintiffs Motion for Entry of Final Judgment "to the extent tender was made." Bates Def MSJ163, Lines 24-25. Thereafter, Plaintiff cashed the tender check in the amount of the policy limits and perfected an accord and satisfaction.

Plaintiffs waived any remedy to contest cure of alleged bad faith when they cashed check #0079387124 for the $75,000.00 policy limits. Bates DEF MSJ172. If Plaintiffs did not want to accept the tender check, they should have not (1) moved the state court for and entry of final judgment in the amount of the policy limits, (2) rejected the check and moved forward with their underlying UM action, or (3) appealed the Order granting Defendant's Motion for Summary Judgment holding that Defendant USAA CIC tendered the policy limits within the 60-day cure period. However, Plaintiffs chose not to challenge the state court's ruling and cashed the tender check unconditionally. Plaintiffs cannot later avoid the effect of that action by claiming to have received the funds only under protest especially where Plaintiffs moved for entry of final judgment and the court granted Plaintiffs request "to the extent tender was made" Bates Def MSJ163, Lines 24-25.

Accordingly, this Court should enter summary judgment in favor of USAA CIC because Plaintiffs' claim is barred by the doctrine of accord and satisfaction.

### II.     IN THE ALTERNATIVE, PLAINTIFFS ARE NOT ENTITLED TO A SECOND DETERMINATION OF UM DAMAGES

Should the Court not grant summary judgment based on the foregoing argument, Plaintiffs' claim must also fail because the Circuit Court has already fixed the amount of damages in its Order on Plaintiffs Motion for Entry of Final Judgment. Bates DEF MSJ169. This Order fixed the damages in the underlying UM claim at the $75,000.00 policy limits. Because the amount of the "Final Judgment" is not in excess of the policy limits, there can be no bad faith.

The insurer owes "a fiduciary duty to act in [the insured's] best interest" and is obligated to take actions in which to avoid an excess judgment. *Harvey v. GEICO Gen. Ins. Co.*, 2018 Fla. LEXIS 1705, at *12 (2018); see *Boston old Colony Ins. Co. v. Gutierrez*, 386 So. 2d 783 (Fla. 1980). It is well settled under Florida law that a full determination of both liability and damages is required prior to the filing of a bad faith action. *Fridman v. Safeco Ins. Co.*, 185 So. 3d 1214, 1224 (Fla. 2016); *Blanchard v. State Farm Mut. Auto Ins. Co.*, 575 So. 2d 1289, 1291(Fla. 1991). "[I]t is obvious that the UM verdict to which the insured is entitled must be binding in the bad faith action." *Fridman*, 185 So. 3d at 1224. To preclude the use of the UM verdict would force the parties to relitigate the issue of damages, which runs the risk of inconsistent verdicts, could create discrepancy between state and federal courts, and causes a plaintiff to prove their case twice. *Id.*; *Batchelor v. Geico Cas. Co.*, Case No. 6:11-cv-1071-Orl-37GJK, 2014 U.S. Dist. LEXIS 78082, at *4 (M.D. Fla. June 9, 2014). Further, it is a waste of judicial and litigant resources and causes judicial inefficiency. *Fridman*, 185 So. 3d at 1224. "If the amount of the UM verdict was not binding as an element of damages in the bad faith litigation, it would allow the insurer . . . a second bite at the proverbial apple." *Id.* The same rationale applies in this case.

Defendant filed a Motion for Summary Judgment asserting there are no genuine issues of material fact, as the parties agree the damages in the underlying action are for the policy limits.

16

Bates DEF MSJ105-147. Plaintiffs even admitted in their response to Defendant's Request for Admissions that the claim was only worth the $75,000 policy limits which supports the parties agreement. Bates DEF MSJ072-073. Plaintiffs subsequently filed a Motion for Entry of Final Judgment agreeing that the damages in the underlying UM action against USAA are for the policy limits of $75,000.00. Bates DEF MSJ148-150. On August 18, 2017, the trial court granted both Defendant's summary judgment motion and Plaintiffs' motion thereby making a full determination on the liability and damages in the underlying UM action which are now binding in any subsequent bad faith claim. *Fridman*, 185 So. 3d at 1224.

Plaintiffs are now attempting another bite at the apple by requesting a ***second*** determination of damages in the underlying UM action. In Paragraph 22 of Plaintiffs' bad faith Complaint, they state "upon a jury finding of bad faith failure to settle Plaintiffs' UM claim, Plaintiffs shall be entitled to a second jury trial to allow the jury to establish the damages caused by the tortfeasor." Bates DEF MSJ183 at ¶ 22. First and foremost, Plaintiffs' damages were determined by an order granting their *own* Motion for Final Judgment of the policy limits and those damages are binding on Plaintiffs in this bad faith action. See *Fridman*, 185 So. 3d at 1224. Moreover, in response to request for admissions sent to Plaintiffs, they admitted that the damages for Count I (UM benefits) and Count II (Loss of Consortium) was limited to the policy limits. Bates DEF MSJ072-073.

If Plaintiffs' damages were still undetermined, they would lack standing to bring this bad faith action. *Id.* (holding that a full determination of both liability and damages is required prior to the filing of a bad faith action); *Blanchard*, 575 So. 2d 1289. Accordingly, Plaintiffs are not entitled to a second determination of UM damages as the final judgment rendered on August 18, 2017 for the policy limits fixed the amount of damages in any subsequent viable bad faith action.

**III.    PLAINTIFFS' CANNOT REQUESTS A SECOND DETERMINATION OF UM DAMAGES PURSUANT TO ESTOPPEL AND THE LAW OF THE CASE**

Plaintiffs are estopped from taking contrary positions simply because their interests have changed. Judicial estoppel bars a party from asserting a position in one legal proceeding that is inconsistent with its position in a previous, related proceeding. *Coachmen Indus. v. Royal Surplus Lines Ins. Co.*, 2007 U.S. Dist. LEXIS 46134, at * 52-53 (M.D. Fla. June 25, 2007) (considering whether the inconsistency was made under oath in a prior proceeding and whether the inconsistency is meant to make a mockery of the judicial system).

> The broad general rule that a party will not be allowed to maintain inconsistent positions is applied frequently with respect to positions in legal proceedings.  Thus, the general rule is that a party cannot occupy inconsistent positions in the course of a litigation.  It may be also laid down as a general proposition that where a party assumes a certain position in a legal proceeding and succeeds in maintaining that position he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it is to the prejudice of the party who has acquiesced in the position taken by him.

*McPhee v. State*, 254 So. 2d 406, 409-10 (Fla. 1st DCA 1971). Plaintiffs moved the trial court for entry of final judgment of the policy limits in which they were successful in obtaining. Bates DEF MSJ146-148 & Bates DEF MSJ169. Plaintiffs may not, in a subsequent bad faith action, take the contrary position that they are entitled to a ***second*** determination of UM damages. *McPhee*, 254 So. 2d at 109-10 (reasoning that where a party is successful in maintaining one position they may not thereafter assert the opposite position simply because their interests have changed).

"Law of the case rules have developed to maintain consistency and avoid reconsideration of matters once decided." *United States v. Escobar-Urrego*, 110 F.3d 1556, 1560 (11th Cir. 1997) The Circuit Court's ruling to extend the 60-day cure period became the *law of the case* when Plaintiffs failed to object or seek review of such ruling. *Id.* ("[A]n issue decided at one stage of a case is binding at later stages of the same case."). To allow a party another bite at the apple when

18

they have chosen not to argue a point when the initial opportunity arose would create prejudice and injustice.

Accordingly, this Court should estop Plaintiffs from a second determination of UM damages as it is inconsistent to their prior position and inapposite to the law of the case.

## IV.   PLAINTIFFS' COMPLAINT INCLUDES IMPROPER ALLEGATIONS

Should the Court not grant summary judgment, certain allegations in Plaintiff's Complaint must fail. As sated, the purpose of a CRN is to give the insurer notice of any alleged violations. The "notice must be made with sufficient specificity to allow the insurer to understand and, if it chooses, to cure the violation." *Longpoint*, No. 5:05CV45RHWCS, 2005 WL 1315810, at *2 n.3. A plaintiff is precluded from recovering any claim which was not included in the CRN but appears in the complaint. *Altheim v. GEICO Gen. Ins. Co.*, Case. No. 8:10-cv-156-T-24TBM 2011 U.S. Dist. LEXIS 4502, at 14-15 (M.D. Fla. Jan. 18, 2011). Plaintiffs' CRN filed on October 27, 2016 only cites to section 624.155, Florida Statutes, as a "Reason for Notice." Bates DEF MSJ001-002. Both Plaintiffs' initial Complaint and the subsequent bad faith Complaint, however, include not only allegations for violations of section 624.155 but also violations of section 626.954, unfair methods of competition and unfair or deceptive acts. Bates DEF MSJ007-011 at ¶ 19 & Bates DEF MSJ180-181 at ¶ 17. Here, Plaintiffs are precluded from recovering for any claim regarding section 626.954 as it was not included in the CRN and Defendant was not given proper notice of such allegation.

## V.   CONCLUSION

USAA CIC is entitled to final summary judgment because it relied fully on the Circuit Court's extension of the 60-day cure period and tendered the full amount of the UM policy limits thereby curing any and all alleged violations set forth in the CRN. Plaintiffs never challenged the

Circuit Court's Order allowing an extension of the CRN cure period. Plaintiff's also unconditionally negotiated the policy limits check. Alternatively, Plaintiffs are estopped from a second determination of UM damages as the damages were fixed by the Circuit Court and are binding on this subsequent bad faith claim. Finally, Plaintiffs are precluded from recovering any damages which were not originally alleged in the CRN.

WHEREFORE, USAA CASUALTY INSURANCE COMPANY respectfully requests this Honorable Court to grant this Motion for Summary Judgment and grant such other relief as it may deem just and proper.

Respectfully submitted this 22nd day of July, 2019.

**BOYD & JENERETTE, P.A.**

_____
KRISTEN M. VAN DER LINDE
Florida Bar No. 0964573
**TRIAL COUNSEL**
ANDREW P. COLLINS II
Florida Bar No. 11809
201 North Hogan Street, Suite 400
Jacksonville, Florida 32202
904-353-6241 - Telephone
904-493-3739 - Facsimile
*Attorneys for USAA CIC*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via CM/ECF, on this 22nd day of July, 2019.

_____
**ATTORNEY**